UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LeJeune Steel Company,

      Plaintiff,

v.   No. 11-cv-1463 (JNE/SER)
ORDER

New Millennium Building Systems, LLC,

      Defendant.

---

Jeffrey A. Wieland, Esq., Fabyanske Westra Hart & Thomson, PA, appeared for Plaintiff LeJeune Steel Company.

Mark E. GiaQuinta, Esq., and Robert W. Eherenman, Esq., Haller & Colvin, PC, and Brooke D. Anthony, Esq., Anthony Ostlund Baer & Louwagie, PA, appeared for Defendant New Millennium Building Systems, LLC.

---

Plaintiff LeJeune Steel Company (LeJeune) sued Defendant New Millennium Building Systems, LLC (NMBS) in Minnesota state court for breach of contract and in the alternative under a theory of promissory estoppel. NMBS properly removed the case to federal court. LeJeune, a subcontractor for structural steel on a construction project, subcontracted with NMBS for a portion of the work which is the subject of this lawsuit. The matter is before the court on the parties' cross-motions for summary judgment. For the following reasons, the Court denies LeJeune's motion for summary judgment and denies in part and grants in part NMBS's motion for summary judgment.

## I.   BACKGROUND

LeJeune was awarded the subcontract to provide structural steel fabrication for a Target Store project in Rialto, California. Before submitting its bid to the general contractor, LeJeune solicited bids from subcontractors for joists, girders, and steel decking. The bidding

1

subcontractors were provided preliminary drawings and specifications prepared by Target's architect. One of these preliminary drawings depicted 16 "special frame trusses" and the general notes section of the specifications referred to "special truss moment frames" (STMFs). The general notes identified specific seismic requirements for these STMFs and stated that the entire project was to conform to California building codes. STMFs are specially designed to crumple in specific locations when exposed to seismic activity. Thus, buildings that use STMFs suffer less damage in an earthquake than buildings constructed with traditional rigid materials, which transmit vibrations throughout the structure. The 16 STMFs form the basis of the parties' dispute.

On March 2, 2010, NMBS submitted a quotation of $670,508 to provide 809 joists and 92 girders and of $288,638 to provide steel decking. In the "Standard Exclusions & Qualifications" section of the quotation, NMBS stated "[j]oist are per SJI standards, including welding. Not AWS welding."[1] The quotation specifically referenced the preliminary drawings and specifications by document number. LeJeune called NMBS to ask if the March 2 bid included "16 specific joist girders." (Wieland Decl. Ex. C, at 10, ECF No. 22). NMBS confirmed that they were included, and LeJeune asked for another bid without those 16 "joist girders." NMBS submitted a second bid on March 3, 2010 that was $50,657 less than its previous bid. LeJeune claims that the 16 "joist girders" that NMBS subtracted in its second bid were the

---

[1] SJI stands for the Steel and Joist Institute, a trade organization that sets standards for the steel joist industry. (Wieland Decl. Ex. A, ECF No. 22). AWS is the American Welding Society, which also publishes standards for joist welding. (Wieland Decl. Ex. A, at 1). SJI takes a performance based approach whereas AWS uses "literal and empirical" criteria. (Wieland Decl. Ex. A, at 7-8). Thus, SJI standards allow for defects in welds as long as there is a sufficient portion of the weld that satisfies all criteria and the overall structural performance is not affected. (Wieland Decl. Ex. A, at 7-8).

STMFs. NMBS states that its bids only included standard joists, and in the second bid, it merely removed 16 of these standard joist girders.

LeJeune used the March 2 bid from NMBS in its winning bid to the general contractor. On March 29, 2010, LeJeune sent NMBS a purchase order for the exact amount of the March 2 quotation. The Purchase Order, like NMBS's quotation, was divided into two sections. It stated that NMBS was to provide "steel joists, joist girders, and 16 STMF girders" as well as "roof deck (1-1/2" DGB-36, G-60 + white primer), floor deck (1-1/2" DGB-36, G-60), all associated accessories." (Pl.'s Compl. Ex. B, ECF No. 1). The Purchase Order also specified that "[d]esign of STMF frames to be in accordance with applicable AISC design guides and in accordance with loadings indicated on design drawings."[2] The preliminary drawings that NMBS referenced in its quotation were also referenced on LeJeune's Purchase Order. On March 31, NMBS sent LeJeune an Order Confirmation which stated in part: "We have received your purchase order for the above mentioned project and are in the process of filling it." (Pl.'s Compl. Ex. C, ECF No. 1). The Order Confirmation did not refer to the specifics of the project.

After confirming the Purchase Order, NMBS received an email from John Mayo, the president and CEO of JD2, Inc., a competing company that produces STMFs. In his email, Mayo explained the complexities of designing STMFs and offered assistance to NMBS. This email was forwarded among the executives at NMBS while they determined if their quote took into consideration the design complexity of STMFs. NMBS verified with LeJeune's engineer that the project required 16 STMFs designed and fabricated to standards other than SJI. NMBS alleges that this call began a dispute between the parties over the STMFs. LeJeune claims NMBS gave

---

[2]   AISC stands for the American Institute of Steel Construction, a not-for-profit technical institute and trade association that provides standards and develops regulations for the structural steel design industry. *See* www.aisc.org.

no indication that it could not provide the STMFs and argues that the discussions with LeJeune's engineer only concerned technical aspects of the design. LeJeune alleges conversations of this type are common in the business. In mid-April, JD2 gave NMBS a quote of $288,240 to produce the 16 STMFs.

The general contractor issued a revised set of plans on April 14, 2010. LeJeune asked NMBS to provide any pricing changes due to the drawing revisions. The revised plans did not affect the STMFs, but they did require changes to the decking quantity and price.

On May 13, 2010, NMBS sent a letter to LeJeune which stated: "[W]e have no other choice but to either exclude [the STMFs] from our bid, which you requested a deduct for the day of the bid. We can send an add for us supplying them per the new standards. Or we can cancel the order." (Pl.'s Compl. Ex. E, ECF No. 1). LeJeune claims this letter was the first time it learned that NMBS had a problem supplying the STMF portion of the contract. LeJeune viewed the letter as a repudiation of the parties' contract. But NMBS claims this letter was an attempt to resolve an on-going dispute between the parties over the STMFs. After receiving the letter, LeJeune claims the parties attempted to negotiate a resolution to the STMF dispute for two weeks. NMBS does not acknowledge any negotiations during this two-week period. Meanwhile, on May 24, 2010, NMBS sent LeJeune a quote with an additional $4,714 for decking due to the April 14 drawing revisions. The additional quote does not mention the joist and girder portion of the project.

On May 27, LeJeune claims it called and informed NMBS that it was cancelling the joist and girder portion of the order. On June 3, 2010, LeJeune sent NMBS a revised Purchase Order. The June 3 Purchase Order had the same order number as the March 29 Purchase Order, but the order number was followed by "rev 1." The June 3 Purchase Order states: "DEDUCT all joist,

4

joist girders, STMF girders, bridging & access" and "ADD 29 sq. DGB-36 20 gage composite floor deck per 04/14 drawings." (Herzog Decl. Ex. B, ECF No. 23). The total price of the order went from $957,146 to $291,352. NMBS completely performed the decking portion of the contract, and LeJeune paid the agreed price. LeJeune accomplished the joist and girder portion of the project through a combination of in-house work and subcontracting.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact either is or cannot be genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. LeJeune's Motion for Summary Judgment

LeJeune argues that the Court should grant its motion for summary judgment because the parties had a valid contract that included the 16 STMFs, and NMBS breached that contract. LeJeune argues that the March 2 quotation by NMBS contained the 16 STMFs, and even if it did not, the March 29 Purchase Order clearly included the STMFs and NMBS sent an Order Confirmation accepting the Purchase Order. It claims NMBS breached the contract by

anticipatory repudiation when it sent the May 13 letter refusing to supply the STMFs for the price in its March 2 quotation.

Minnesota has adopted the Uniform Commercial Code (UCC) which controls this transaction. *See* Minn. Stat. § 336 *et seq.* (2010). Minnesota Statute § 336.2-610 provides that when a party repudiates a contract "with respect to a performance not yet due" the aggrieved party may, among other things, "resort to any remedy for breach." Minn. Stat. § 336.2-610 (2010). In order to prove a breach of contract, a plaintiff must show: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, No. A10-0658, 2011 WL 6057981, at *3 (Minn., Dec. 7, 2011). "[T]he formation of a sales contract requires the mutual assent of the parties engaging in the transaction." *Hy-Vee Food Stores, Inc. v. Minn. Dept. of Health*, 705 N.W.2d 181, 185 (Minn. 2005). The parties do not dispute that a contract was formed, however, they do not agree on the scope of that contract.

In order to determine whether NMBS repudiated the contract by refusing to provide STMFs at the contract price, the Court must first determine whether the contract included the STMFs. The primary goal of contract interpretation is to discern the intent of the parties. *Travertine Corp. v. Lexington-Silverwood, Ltd. P'ship*, 683 N.W.2d 267, 271 (Minn. 2004). The construction of a contract is a matter of law unless the contract is ambiguous. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn. 1997). The interpretation of an ambiguous contract is a question of fact for the jury. *Denelsbeck*, 666 N.W. 2d at 346. A court

must begin its analysis with the plain language of the contract. *See Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir. 2009).

NMBS claims that its offer included only SJI standard joists. It argues that the standard exclusion language included in its quotation limited it to SJI standard joists. Because the STMFs required AWS welds, NMBS argues the STMFs were excluded. This argument is based on NMBS's assertion that STMFs are joists. LeJeune contends that STMFs are girders, not joists. The categorization of the STMFs is disputed. The distinction is material, because if STMFs are joists, then NMBS excluded them from its bid with the standard exclusion that all joists will be to SJI standard. If STMFs are girders, then NMBS did not exclude them and they were included in the offer. "With regard to technical terms or words of art, however, we afford these terms 'their technical meaning when used in a transaction within their technical field.'" *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir. 2009) (quoting Restatement (Second) of Contracts § 202(3)(b) (1981)). The Court cannot determine the definition of these key technical terms from the record.

Further, the drawings referenced in the quotation and Purchase Order contain additional terms over whose definition the parties disagree. LeJeune argues that the "special truss frames" referenced in the drawings are the 16 STMFs and were included in NMBS's March 2 bid. Although this language may not be precise, it does differentiate the 16 trusses at issue from the standard joists designated for the rest of the project. The general notes give detail on the requirements of the STMFs. NMBS contends that the "special frame trusses" are not STMFs and that the one reference to STMFs in the general notes does not incorporate them into its bid. The parties' understanding of "special frame trusses" in the drawing is material as the inclusion of the STMFs is the heart of this dispute.

7

Because there are disputed facts as to the scope of the contract, it is premature for the Court to determine whether the May 13 letter from NMBS was an anticipatory repudiation of the contract. The disputed facts surrounding the contents of the parties' contract are material and prevent the Court from granting LeJeune's motion for summary judgment.

### B. NMBS's Motion for Summary Judgment

NMBS moves for summary judgment on two theories: First, that the parties modified their contract to exclude the STMFs, and second, that LeJeune's claim is barred by the doctrine of accord and satisfaction. NMBS argues that the Court need only consider the June 3, 2010 Purchase Order, which it alleges to be a modification to the contract. It claims that the June 3 Purchase Order is the controlling document and only events occurring on or after June 3 are relevant to the dispute. NMBS contends that there are no disputed facts involving the June 3 Purchase Order or any events after that date.

NMBS argues that the June 3 Purchase Order modified the March 29 Purchase Order. The UCC provides "[a]n agreement modifying a contract within this article needs no consideration to be binding." Minn. Stat. § 336.2-209(1) (2010). If the parties wish to restrict modification to writings signed by both parties, they must so specify. *Id.* at § 336.2-209(2). Additionally, the comment to § 336.2-209(1) imposes a good faith requirement, stating: "The effective use of bad faith to escape performance on the original contract terms is barred. . . [t]he test of 'good faith' between merchants or as against merchants includes 'observance of reasonable commercial standards of fair dealing in the trade.'" *Id.* at § 336.2-209(1), Comment 2. NMBS argues that the June 3 Purchase Order was a permissible modification, and the June 3 contract became binding on LeJeune when it accepted delivery of the decking material. LeJeune agrees that the June 3 Purchase Order modified the decking portion of the contract. But it argues

8

that the contract was severable, and the joist and girder portion was cancelled rather than modified by the June 3 Purchase Order.

Severability of a contract is determined by the intent of the parties. *E. Edelman & Co. v. Queen Stove Works*, 284 N.W. 838, 844 (Minn. 1939). The parties' intent should be determined by considering "the language used, the subject matter of the contract, and how the parties themselves treated it." *Anderson v. Kammeier*, 262 N.W.2d 366, 370 (Minn. 1977). "Where the contract is severable the buyer can, with reference to any one of the parts into which the contract is divisible, affirm or rescind without prejudice to his choice as to the other parts." *Edelman*, 284 N.W. at 844. If the Court follows NMBS's suggestion and only considers the parties' actions after June 3, it must conclude that the contract was severable. The plain language of the June 3 Purchase Order clearly removed the joist and girder portion of the contract while retaining the decking portion. The parties both performed the decking portion. Their conduct suggests that they considered the severed decking contract valid.

But the Court does not limit its analysis of this dispute to events beginning on June 3, 2010. The Court cannot determine the validity of a modification to a contract without first examining the underlying contract and the parties' course of dealing prior to the alleged modification. Such a determination requires the Court to consider the disputed facts identified above in its discussion of LeJeune's motion for summary judgment. Because the terms of the original contract are clouded with disputed facts, the Court cannot grant NMBS's motion for summary judgment based on the theory that the June 3 Purchase Order was a modification of the original contract.

Further, the Court must consider disputed events prior to June 3 in order to determine the validity of LeJeune's defense that it cancelled rather than modified a severable contract. The

9

June 3 Purchase Order uses the language "DEDUCT all joist, joist girders, STMF girders, bridging & access." It is ambiguous whether "deduct" means LeJeune cancelled or modified the Purchase Order. *See Art Goebel*, 567 N.W.2d at 515 ("A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation."). When faced with an ambiguity in the language of a contract, the Court may consider extrinsic evidence to determine the intent of the parties. *See Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 295 (Minn. Ct. App. 1995). Much of the relevant extrinsic evidence is disputed. First, NMBS claims that the parties had an on-going dispute over the inclusion of STMFs in the contract beginning a few days after the March 29 Purchase Order. LeJeune denies any knowledge of a dispute between the parties until it received NMBS's May 13 letter refusing to supply the STMFs at the agreed upon price. Second, the parties take very different views of the May 13 letter. NMBS claims the letter presented options to resolve the disagreement over STMFs. LeJeune, on the other hand, views the May 13 letter as a repudiation of the contract and points to the letter's use of the phrase "we have no other choice" as an outright refusal to perform the contract as promised. Third, LeJeune claims that following the May 13 letter the parties engaged in two weeks of negotiation to resolve the STMF issue. NMBS denies any attempt to resolve the issue and claims LeJeune's response to the May 13 letter was the June 3 Purchase Order. Fourth, LeJeune alleges that it told NMBS in a May 27 phone call that it was cancelling the joist and girder portion of the Purchase Order. It explains that the June 3 Purchase Order was merely documentation of the cancellation to prevent NMBS from later reversing its repudiation. NMBS does not acknowledge the May 27 phone call. LeJeune argues these disputed facts are material because they demonstrate its intent to cancel rather than modify the contract. The Court agrees that it cannot determine whether the parties cancelled the joist and girder portion of the contract from the language of the June 3

Purchase Order, and the disputed facts surrounding the relevant extrinsic evidence prevent the Court from ruling as a matter of law. *See Denelsbeck*, 666 N.W.2d at 346 ("[T]he interpretation of an ambiguous contract is a question of fact for the jury." (quoting *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979))).

In the alternative, NMBS argues that LeJeune accepted an accord and satisfaction when it issued the June 3 Purchase Order and accepted the decking material. An accord and satisfaction function as an executed contract and can discharge liability on a prior agreement. *See Roaderick v. Lull Eng'g Co.*, 208 N.W.2d 761, 764 (Minn. 1973) (internal citations omitted). NMBS relies on the following language: "An accord is a contract in which a debtor offers a sum of money, or some other stated performance, in exchange for which a creditor promises to accept the performance in lieu of the original debt." *Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 72 (Minn. 2000). The court in *Webb* goes on to explain:

> An enforceable accord and satisfaction arises when a party against whom a claim of breach of contract is asserted proves that (1) the party, in good faith, tendered an instrument to the claimant as full satisfaction of the claim; (2) the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim; (3) the amount of the claim was unliquidated or subject to a bona fide dispute; and (4) the claimant obtained payment of the instrument. *See* Minn. Stat. § 336.3-311(a)-(b).

*Webb*, 617 N.W.2d at 73 (footnote omitted). Here, NMBS tendered the May 13 letter that contained three options. NMBS claims that LeJeune accepted the first option—to exclude the STMFs from the bid—by sending the June 3 Purchase Order for decking alone. Even so, there is nothing in the June 3 Purchase Order or the May 13 letter that can be construed as a "conspicuous statement" that the document's terms were intended to provide "full satisfaction"

of any potential claims by LeJeune against NMBS for the joists, girders, or STMFs. Neither LeJeune's June 3 Purchase Order nor NMBS's May 13 letter constitute an accord.

LeJeune also argues that it is entitled to recover damages under a theory of promissory estoppel. The equitable doctrine of promissory estoppel requires proof that "1) a clear and definite promise was made, 2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and 3) the promise must be enforced to prevent injustice." *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). Promissory estoppel only applies where no valid contract exists. *Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981); *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995). The parties do not dispute that a valid contract was formed. They merely disagree on one term of that contract. Thus, LeJeune's claim based on a theory of promissory estoppel fails as a matter of law because a valid contract existed between the parties. NMBS's motion for summary judgment is granted as to LeJeune's claim of promissory estoppel.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 13] is DENIED as to Count I of the Complaint [Docket No. 1] and GRANTED as to Count II of the Complaint.

2. Plaintiff's Motion for Summary Judgment [Docket No. 18] is DENIED.

Dated:  March 29, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
